## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| DEBBIE BOWMAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:12-cv-246-GZS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable, prior to September 15, 2010, of performing past relevant work as a cleaner or laborer/woodworker. The plaintiff seeks reversal and remand on the bases that the administrative law judge erred in (i) relying, with respect to her physical impairments, on findings made in a previous decision, (ii) determining that she had only two severe mental impairments and adopting the mental residual functional capacity ("RFC") opinions of nonexamining sources over those of treating and examining sources, and (iii) finding, at Step 4, that the job of cleaner constituted "past relevant work" and that she retained the RFC to perform the woodworker job. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 12, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

No. 10) at 5-21.  I find no reversible error and, accordingly, recommend that the court affirm the decision.

This case returns to this court following a January 20, 2010, reversal and remand of a December 1, 2008, adverse decision on the plaintiff's March 5, 2007, applications for SSD and SSI benefits.  *See* Record at 8-18, 736-42.  The court remanded the case for further proceedings consistent with its opinion, in which it held that the administrative law judge's Step 2 finding, insofar as it concerned the plaintiff's mental impairments, was not supported by substantial evidence, necessitating reversal and remand.  *See id*. at 736, 742.  In its own remand order dated March 25, 2010, the Decision Review Board remanded the case to an administrative law judge for further proceedings consistent with the order of the court, directing the administrative law judge to "offer the [plaintiff] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision."  *Id*. at 745.

The administrative law judge noticed a post-remand hearing for June 22, 2011, stating: "A vocational expert will appear at the hearing by video teleconference.  A medical expert will testify at your hearing.  A second medical expert will testify at your hearing."  *Id*. at 757.  A transcript of that hearing indicates that, on that date, the plaintiff appeared with counsel, as did a vocational expert, Kenneth Everhard, and a medical expert, Philip Toops.  *See id*. at 719.  A second medical expert, Peter B. Webber, M.D., apparently was also available to provide telephonic testimony.  *See* Statement of Errors at 7; Record at 720.[3]

The administrative law judge immediately continued the hearing because the plaintiff had just submitted additional psychiatric evidence that he had not had the opportunity to review.  *See id*. at 719-20.  In so doing, the administrative law judge rejected the plaintiff's counsel's

---

[3] Dr. Webber had testified at the plaintiff's original (pre-remand) hearing on September 9, 2008.  *See* Record at 8, 21.

2

suggestion to take the testimony of Dr. Webber that day and defer only the psychiatric piece of the case. *See id*. at 720. The administrative law judge noticed a supplemental hearing for October 19, 2011, stating: "A vocational expert will appear at the hearing by video teleconference. A medical expert will testify at your hearing. A second medical expert will appear at the hearing by video teleconference." *Id*. at 797. The hearing was duly convened on October 19, 2011, with appearances by the plaintiff, her counsel, vocational expert Peter Mazarro, and medical expert Charles O. Tingley, Jr., Ph.D. *See id*. at 679.[4] At the outset of the hearing, the following colloquy took place between the plaintiff's counsel and the administrative law judge:

> ATTY: Your Honor, I just have a quick question. Our notice said that Dr. Webber [PHONETIC] was going to be present but I don't see him here.
>
> ALJ: He's not, the way I would interpret the remand order is that the only issue before me is on the mental impairment aspect of the claim and so [that's] what I intend to go over today.
>
> ATTY: Well, I just need to note my objection, Your Honor. I think it's pretty clear that [the plaintiff] has some significant physical issues and that's why I understood Dr. Webber was going to be present.
>
> ALJ: Well, is there any new evidence that materially changes the prior diagnosis or symptoms or RFC?
>
> ATTY: I believe so, Your Honor. If you look at Dr. Hajeem's [PHONETIC] assessment, is it 45E, let me get the correct [sic], she's been diagnosed with and is being treated for fibromyalgia and his form would clearly disable her.
>
> ALJ: Well, should she amend her ALD then?[5]
>
> ATTY: I think, Your Honor, that we don't plan to do that. I think that her emotional problems are disabling at an earlier date but if you conclude otherwise obviously then we're going to have the issue of the physical piece.

---

[4] It would be more accurate to characterize Dr. Tingley, a psychologist, as a "psychological expert." However, for these purposes, I will term him a "medical expert."

[5] The acronym "ALD" probably is meant to be "AOD," or amended onset date (of disability). During her 2008 hearing, the plaintiff amended her AOD from January 1, 2004, to October 1, 2005. *See* Record at 8, 24-25.

ALJ:   Well,  then  I'm  going,  on  that  basis  then  I'm  just  going  to  limit  the
testimony today [to] the mental impairment and I'll note your objection [on] the
record.

*Id*. at 680.

On November 22, 2011, the administrative law judge issued the decision at issue, finding,
in  relevant  part,  pursuant  to  the  commissioner's  sequential  evaluation  process,  20
C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6
(1st Cir. 1982), that the plaintiff met the insured status requirements of the Social Security Act
through December 31, 2011, Finding 1, Record at 657; that since October 1, 2005, her amended
alleged  onset  date  of  disability,  she  had  severe  impairments  of  an  affective  disorder  and
attention-deficit hyperactivity disorder ("ADHD"), Finding 3, *id*. at 657; that, prior to September
5, 2010, the date that she became disabled, she retained the RFC to perform a full range of work
at  all  exertional  levels  with  the  following  nonexertional  limitations:  that  she  was  capable  of
performing the basic mental demands of work, in that she could understand, remember, and carry
out  simple  instructions,  could  use  judgment  in  making  simple  work-related  decisions,  could
respond  appropriately  to  coworkers,  supervisors,  and  usual  work  situations  with  no  public
contact, and could adapt to changes in the ordinary work setting, Finding 5, *id*. at 659; that, prior
to  September  15,  2010,  she  was  capable  of  performing  her  past  relevant  work,  which  did  not
require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 664;
that, beginning on September 15, 2010, the severity of her impairments met the criteria of section
12.04 of Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Finding 7, *id*. at 665; and
that she was not disabled prior to September 15, 2010, but became disabled on that date and had
continued to be disabled through the date of the decision, November 22, 2011, Finding 8, *id*. at
666.   The Appeals Council declined to assume jurisdiction of the case after remand, *id*. at 646-

4

49, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.984(a)-(b), 416.1484(a)-(b); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work.  20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process.  Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work

even if the individual's age, education, or work experience were specifically considered."  *Id.*
(quoting Social Security Ruling 85-28).

## I.  Discussion

## A.  Finding re: Physical Impairments

The plaintiff first faults the administrative law judge for precluding her counsel, without
notice, from taking testimony from Dr. Webber or the vocational expert concerning her physical
impairments.  *See* Statement of Errors at 5-12.  She argues that, while an administrative law
judge retains discretion as to whether to call a medical expert at hearing, the preclusion offended
her due process rights because:

1.     The administrative law judge incorporated his 2008 finding of no severe physical
impairment into his 2011 post-remand decision.  *See id.* at 8.

2.     The 2008 finding was unsupported by substantial evidence in that it was
inconsistent with the sole relevant expert evidence of record, namely, (i) Dr. Webber's 2008
hearing testimony that the plaintiff's tendinitis in her left knee could be a cause of ongoing pain
and might have limited her ability to walk and required her to elevate her leg from time to time,
and (ii) an April, 30, 2007, RFC assessment by Disability Determination Services ("DDS")
nonexamining consultant Iver C. Nielson, M.D., noting physical impairment-related exertional
and nonexertional restrictions.  *See id.* at 8-9.

3.     The administrative law judge impermissibly premised his 2008 finding of no
severe physical impairment on his speculative conclusion that the plaintiff was engaged in drug-
seeking behavior as well as his interpretation and mischaracterization of the raw medical
evidence.  *See id.* at 10-11.

4.     Post-remand, the plaintiff submitted additional evidence bearing on her physical impairments.  *See id*. at 6 & n.4.  This evidence, which has never been seen or assessed by Dr. Nielson, Dr. Webber, or any other medical expert, further undermines the 2008 finding that was incorporated by reference into the 2011 decision.  *See id*. at 6 & n.4, 8.

Social Security applicants are afforded both statutory and constitutional due process rights.   Such applicants have a statutory right, upon request, to "reasonable notice and opportunity for a hearing[.]"  42 U.S.C. § 405(b)(1).  In addition, "applicants for social security disability benefits are entitled to due process in the determination of their claims."  *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001); *see also, e.g., Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005) ("Social security hearings are subject to procedural due process considerations.").  "At a minimum, the Constitution requires notice and some opportunity to be heard.  Above that threshold, due process has no fixed content; it is flexible and calls for such procedural protections as the particular situation demands."  *Mallette v. Arlington County Employees' Supplemental Ret. Sys. II*, 91 F.3d 630, 640 (4th Cir. 1996) (citations and internal quotation marks omitted); *see also, e.g., Eze v. Gonzáles*, 478 F.3d 46, 47 (1st Cir. 2007) ("[N]otice and an opportunity to be heard together comprise an essential principle of due process[.]") (citations and internal quotation marks omitted).

In circumstances in which an administrative law judge has offered what amounts to reasonable notice and opportunity to be heard, there is no underlying due process violation.  *See, e.g., Richardson v. Perales*, 402 U.S. 389, 404-05 (1971) (holding that procedural due process had been afforded in case in which Social Security applicant claimed lack of opportunity to cross-examine reporting physicians but had not taken advantage of opportunity to request that they be subpoenaed; noting, *inter alia*, "This inaction on the claimant's part supports the Court

of Appeals' view that the claimant as a consequence is to be precluded from now complaining that he was denied the rights of confrontation and cross-examination.") (citation omitted); *Pate v. Astrue*, Civil Action No. H-08-249, 2009 WL 4825206, at *9 (S.D. Tex. Dec. 8, 2009) (finding no due process violation when, *inter alia*, the limitations imposed on claimant's attorney's elicitation of evidence from claimant were wholly reasonable, including limiting cumulative testimony).

There was no due process violation in these circumstances.  In 2009, when the plaintiff appealed the administrative law judge's 2008 decision, she argued for reversal and remand solely on the basis of errors in the handling of her mental impairments.  *See* Plaintiff's Itemized Statement of Specific Errors (ECF No. 13), *Bowman v. Astrue*, No. 1:09-cv-161-JAW (D. Me.) at 3-10.  She dropped a footnote in which she suggested, for reasons nearly identical to those articulated in the instant appeal, that the finding of no severe physical impairment was also unsupportable, but she made clear that she was not pressing that point, stating: "In any case, the Plaintiff has elected not to pursue this finding as error on appeal for the following reasons: (1) the two issues argued in this Statement [bearing on the handling of her mental impairments] reflect critical, and clearly demonstrable, errors by the ALJ [administrative law judge] that as such are outcome-determinative; and (2) proper development of this issue would necessarily require an unreasonable expenditure of legal resources, both on the part of Plaintiff's counsel and the court." *Id*. at 2 n.3.

At oral argument, I brought this to the plaintiff's counsel's attention, questioning whether his client had expressly waived any challenge to the finding of the nonseverity of her physical impairments.  He acknowledged that she had.  However, he reasoned that, because the court vacated the 2008 decision in its entirety and did not *preclude* consideration of the issue on

remand, his client was not barred from raising the point.  In essence, he argued, she had been given a fresh start.  In response to this colloquy, counsel for the commissioner contended that the waiver was dispositive unless the plaintiff identified new evidence on remand that would have compelled a different result.  She argued that the plaintiff had failed to do so.

The commissioner has the better argument.  "Waiver normally involves the intentional relinquishment of a known right."  *United States v. Walker*, 665 F.3d 212, 227 (1st Cir. 2011). The plaintiff, having explicitly waived her argument that the 2008 physical RFC finding was unsupported by substantial evidence, cannot now claim that a failure to permit her to revisit and further develop that point post-remand contravenes her due process rights.  *See, e.g., Richardson*, 402 U.S. at 404-05 (no procedural due process violation when Social Security applicant's own inaction deprived him of claimed lack of opportunity to cross-examine reporting physicians).[6]

As counsel for the commissioner suggested, to the extent that the plaintiff relies on her submission post-remand of new evidence bearing on her physical impairments, she falls short of making the necessary showing, for purposes of making out a claim of either due process violation or abuse of discretion, that she was prejudiced by the administrative law judge's failure to take that evidence into account or to permit her to cross-examine Dr. Webber with respect to it.  *See Chuculate v. Barnhart,* 170 Fed. Appx. 583, 587 (10th Cir. 2006) (rejecting claim of due process violation predicated on administrative law judge's denial of permission to submit post-hearing written question to vocational expert when "the ALJ's failure to forward plaintiff's

---

[6] The administrative law judge's transmission to the plaintiff of notices stating that medical experts (presumably including Dr. Webber) would testify at both the June 2011 hearing and the October 2011 hearing, *see* Record at 757, 797, does not change the analysis.  A notice that a medical expert will be called to testify is not a guarantee.  As the plaintiff acknowledges, *see* Statement of Errors at 8, an administrative law judge retains discretion whether to call upon the services of such an expert, *see, e.g., Hicks v. Astrue*, Civil No. 09-393-P-S, 2010 WL 2605671, at *4 (D. Me. June 23, 2010) (rec. dec., *aff'd* July 15, 2010) ("[I]t is settled Social Security law that the decision to call a medical expert at the hearing is almost always discretionary with the administrative law judge.") (citing *Rodriguez Pagan v. Secretary of Health & Human Servs.,* 819 F.2d 1, 5 (1st Cir. 1987) (footnote omitted).

unsupported question does not undermine confidence in the result in this case"); *Adams v. Massanari,* 55 Fed. Appx. 279, 286 (6th Cir. 2003) ("Clearly, in this case, the procedure used by the ALJ did not erroneously deprive Appellant of her interest in the fair determination of her eligibility for benefits, since the ALJ's decision to withhold [a post-hearing] report from the ME [medical expert] had no determinative effect on the outcome of Appellant's hearing."); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (claim of failure to develop full and fair record, like claim that hearing has been held in absence of waiver of right to counsel, requires showing that Social Security applicant "was prejudiced as a result of scanty hearing.  She must show that, had the ALJ done his duty, she could and would have adduced evidence that might have altered the result."); *Burnham v. Social Sec. Admin. Comm'r,* No. 1:11-cv-00246-GZS, 2012 WL 899544, at *5 (D. Me. Mar. 15, 2012) (rec. dec., *aff'd* Apr. 3, 2012) ("Abuse of discretion has been said to exist where a referral to an expert is necessary to the disability determination or where the failure to refer unfairly prejudiced the claimant.").

In her statement of errors, the plaintiff cited portions of the record containing post-remand evidence bearing on the impact of her physical impairments prior to September 15, 2010. *See* Statement of Errors at 6 (citing Record at 862-64, 892-904, 919-21, 930-39, 1017-20).  But she failed to develop this point sufficiently to preserve it, offering no explanation as to how the cited evidence, if reviewed by Dr. Webber or another expert, could have been outcome-determinative.  *See* Statement of Errors at 6; *see also, e.g., Graham v. United States,* 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted).  Tellingly, in response to the argument of counsel for the commissioner that the post-remand evidence bearing on the plaintiff's physical

10

impairments was either cumulative or did not suggest functional limitations, the plaintiff's counsel stated that the Nielson RFC assessment – an old piece of evidence – demonstrated the outcome-determinative nature of the Step 2 error.

For these reasons, there is no error with respect to the administrative law judge's post-remand handling of the plaintiff's physical impairments.[7]

## B.  Finding re: Mental Impairments

The plaintiff next takes issue with the administrative law judge's (i) omission to find that she suffered from severe impairments of recurrent major depression and post-traumatic stress disorder ("PTSD") as well as affective disorder and ADHD, and (ii) choice to credit the opinions of two nonexamining consultants, Dr. Tingley and Lewis F. Lester, Ph.D., over those of treating psychiatrist Paul Minot, M.D., and examining psychologist Barbara F. McKim, Ph.D., with respect to the degree of functional restriction caused by her mental impairments prior to September 15, 2010. *See* Statement of Errors at 12-20.[8]  I find no reversible error.

---

[7] At oral argument, counsel for the commissioner urged the court to address her central argument: that the administrative law judge correctly declined post-remand to reopen the question of whether the plaintiff had a severe physical impairment in accordance with this court's interpretation of the so-called "mandate rule" as set forth in two cases predating his decision, *Steele v. Astrue*, No. 2:09-cv-548-DBH, 2011 WL 4635136 (D. Me. Oct. 5, 2011) (rec. dec., *aff'd* Oct. 25, 2011), and *Bowring v. Social Sec. Admin. Comm'r*, No. 1:09-cv-00573-JAW, 2011 WL 5190789 (D. Me. Oct. 28, 2011) (rec. dec., *aff'd* Nov. 21, 2011), and two cases postdating it, *Maddocks v. Astrue*, No. 1:11-cv-461-NT, 2012 WL 5255197 (D. Me. Sept. 30, 2012) (rec. dec., *aff'd* Oct. 23, 2012), and *Day v. Astrue*, No. 1:12-cv-141-DBH, 2012 WL 6913439 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd* Jan. 18, 2013).  Counsel observed that, in the above-referenced cases, the commissioner unsuccessfully pressed a position similar to that espoused by the plaintiff here: that, absent a directive from the court, the full panoply of issues may be addressed on remand.  She noted that, in this case, the shoe is on the other foot, presenting an opportunity for the court to clarify when an administrative law judge can revisit issues not expressly set forth in the remand order.  In response, the plaintiff's counsel argued that the cited caselaw is distinguishable.  Because the plaintiff's waiver is dispositive, I recommend that the court decline this opportunity.  This issue is best addressed in the context of a case in which it is outcome-determinative.

[8] The administrative law judge found the plaintiff disabled as of September 15, 2010, the date that she was "involved in a significant motor vehicle accident in which she was found face down about 80 feet from her vehicle unconscious."  Record at 665 (citations omitted).  "Although an MRI of her brain returned within normal limits, she was diagnosed with a traumatic brain injury with cognitive and memory deficits."  *Id.* (citations omitted).  The administrative law judge found that, as of that date, the plaintiff's mental impairments were severe enough to be disabling.  *See id.*

11

As the plaintiff points out, *see id.* at 12, Dr. Minot diagnosed her not only with major depression, *see* Record at 528-30, but also, in 2004 and 2005, and again in 2009 and thereafter, with PTSD, *see id.* at 528-33, 1214-22.  Dr. Minot further stated in a mental RFC opinion dated June 23, 2008, as well as a supplemental letter bearing a fax date stamp of September 26, 2008, that the plaintiff had a long history of PTSD with depression and mood instability as well as breakthrough depressive and dissociative complaints and was incapacitated by anxiety and depression complaints that were only marginally controlled with medication.  *See id.* at 635, 645.

To the extent that the administrative law judge found that the plaintiff suffered from an affective disorder (as opposed to depression), *see* Finding 3, *id.* at 657, any error was purely semantic.  Both Dr. Lester, in a Psychiatric Review Technique Form ("PRTF") dated May 18, 2007, and Dr. Tingley, in testimony during the plaintiff's October 19, 2011, hearing, found that she did in fact have severe medically determinable impairments of depression (listed, in Dr. Lester's PRTF, under the category "Affective Disorders") as well as ADHD, *see id.* at 482, 695, and the administrative law judge adopted that finding, *see id.* at 663-64.

To the extent that the administrative law judge omitted to find a severe PTSD condition, he again relied on the opinions of Drs. Lester and Tingley.  *See id.*  The plaintiff argues that this reliance was misplaced in that Dr. Lester did not mention the PTSD diagnosis and did not have the benefit of review of the full record, including Dr. Minot's 2008 opinion and supplemental letter, and Dr. Tingley apparently also missed the PTSD diagnosis, having relied in part on Dr. Lester's opinion and having failed even to mention, let alone provide a rationale for rejecting, that diagnosis.  *See* Statement of Errors at 14-15.  Nonetheless, it is reasonably clear that Dr. Tingley was aware of the PTSD diagnosis.  He discussed at some length, during cross-examination by the plaintiff's counsel, the 2008 mental RFC opinion and supplemental letter in

which Dr. Minot highlighted that diagnosis.  *See* Record at 698-705.  Although he did not mention, or provide a rationale for rejecting, the PTSD diagnosis, the plaintiff, who was represented by counsel, did not avail herself of the opportunity to question him at hearing as to why he omitted to do so.  The plaintiff bore the burden of proving her medically determinable impairments; the commissioner did not have the burden of disproving them.  *See, e.g.*, *McDonald*, 795 F.2d at 1124.

In any event, even if the administrative law judge erred in omitting to find a severe impairment of depression and/or PTSD, "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim."  *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010).  The plaintiff attempts to demonstrate harm by way of the administrative law judge's assertedly wrongful rejection of Dr. Minot's opinion that her combined depression, ADHD, and PTSD caused marked functional limitations.  *See* Statement of Errors at 13.  However, for the reasons discussed below, I find no error in that regard.  Thus, the plaintiff falls short of demonstrating that any Step 2 error could have been outcome-determinative.

The administrative law judge attributed "limited weight" to Dr. Minot's 2008 mental RFC opinion and supplemental letter on the basis that they were "inconsistent with the objective medical findings, including his own examination findings."  Record at 664 (citations omitted).  He explained:

> On June 23, 2008, Dr. Minot essentially opined that the [plaintiff] has marked limitations in her ability [to] understand and remember, persist and concentrat[e], socially int[er]act, and adapt to changes in a work setting.  Dr. Minot seemed to affirm his opinion in a report from September 2008, in which he stated that the [plaintiff], since December 2005, has remained at or near her baseline in terms of her ability to function.  Dr. Minot, in this September 2008 report, indicated that

his treatment notes are consistent with his opinion expressed in his June 23, 2008 opinion.  However, his contemporaneous treatment notes tend to establish that the [plaintiff] was doing fairly well without acute psychiatric complaints, and that her periods of exacerbation were few and discrete, and responded to medication management with consequent rapid improvement in her symptoms.

*Id*. (citations omitted).[9]

The plaintiff argues that the administrative law judge gave short shrift to factors that weighed in favor of adopting the Minot opinion, including Dr. Minot's specialty in psychiatry, his longstanding treating relationship with the plaintiff, and his detailed rationale in his September 2008 letter for his mental RFC opinion.  *See* Statement of Errors at 16-17; *see also, e.g*., 20 C.F.R. §§ 404.1527(c), 416.927(c) (listing factors relevant to the evaluation of medical opinions as (i) whether there is an examining relationship, (ii) whether there is a treatment relationship and, if so, its length, the frequency of examination, and the nature and extent of the relationship, (iii) supportability *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) whether the medical source is offering an opinion on a medical issue related to his or her specialty, and (vi) other factors highlighted by the claimant or others).

She adds that, contrary to First Circuit authority, including the recent case of *Ormon v. Astrue*, No. 11-2107, 2012 WL 3871560 (1st Cir. Sept. 7, 2012), the administrative law judge accorded undue weight to one factor, the purported inconsistency between the Minot opinion and the objective findings of record.  *See* Statement of Errors at 16-17.  She asserts that, in *Ormon*, the First Circuit "explicitly held that such inconsistencies, standing alone, are not a sufficient

---

[9] In his September 2008 letter, Dr. Minot stated, *inter alia*, that (i) "psychiatric progress notes are exactly that – notes of the client's progress from one session to the next – not comments on her ability to function in a setting other than the one the patient was in at the time of the note[,]" (ii) the phrase "psychiatrically stable" meant "neither improving nor declining in the setting [the plaintiff] was in[,"] (iii) "[t]o achieve that stability [the plaintiff] has withdrawn from almost all normal social contact, leaving her socially isolated and with little purposeful activity[,]" (iv) "[w]hile she has had periods of relative improvement (as well as relative decline) she has stayed at or near the same baseline throughout this period from December 2005 to the present in terms of her ability to function[,]" and (v) "[m]y notes are not inconsistent with [the views expressed in the June 23, 2008, form]."  Record at 645.

14

basis upon which to reject a treating physician's opinion." *Id*. at 16 (citation and internal quotation marks omitted). She points out that, in this case, Dr. Minot was not only aware of the administrative law judge's perceived concerns regarding inconsistency but also expressly addressed them in the 2008 supplemental letter, explaining in detail the medical principles that supported his opinion. *See id*. at 16-17.

The plaintiff reads too much into *Ormon.* In *Ormon*, the First Circuit held that "*in a case involving complex back pain*, such inconsistencies, standing alone, are not a sufficient basis upon which to reject a treating physician's opinion." *Ormon*, 2012 WL 3871560, at *4 (emphasis added). The First Circuit noted that the administrative law judge had overemphasized normal test findings, many of which were charted by the very treating physician whose RFC opinion the administrative law judge rejected, while overlooking the fact that there was objective support, in the form of radiographic findings, for at least one suspected cause of the claimant's back pain. *See id*. The court further noted that the primary inconsistent evidence was a written RFC assessment of a nonexamining consultant that was not well-explained and, thus, could not be said to constitute *substantial* inconsistent evidence. *See id*.

This is neither a back pain case nor a case devoid of substantial inconsistent evidence. The administrative law judge summarized Dr. Minot's progress notes in detail, *see* Record at 660-62, supportably finding that "[t]reatment records after October 2005, and up until [the plaintiff's] accident, reflect a general waxing and waning of her depression, with me[n]tal status examinations generally reflecting her as mildly depressed, with periods of moderate depression, and at other times euthymic with normal mental status examinations[,]" *id*. at 660 (citations omitted). He noted, *inter alia*, that the level of functional restriction found by Dr. Minot in his RFC opinion was not reflected in record evidence dated prior to the plaintiff's September 15,

2010, automobile accident; for example, the plaintiff continued to work after her alleged onset date of disability, remained hopeful of getting another job, reported depression secondary to not having a working vehicle, and indicated that she was hopeful after her mother gave her a car. *See id*. at 663.

At oral argument, the plaintiff's counsel argued that the administrative law judge, as a layperson, was not competent to determine that the Minot progress notes were inconsistent with the Minot RFC opinion, particularly in these circumstances, in which Dr. Minot had submitted the September 2008 letter explaining why they were in fact consistent.  Nonetheless, as counsel for the commissioner rejoined, an administrative law judge is competent to judge whether such inconsistencies exist and whether a "savior" letter such as that of Dr. Minot is worthy of credence; he need not simply accept it at face value.  *See, e.g., Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012) ("While an administrative law judge is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia*, judging whether later submitted evidence is material and whether there are discrepancies between a treating source's opinion and his or her underlying progress notes.") (citation and internal quotation marks omitted).  As counsel for the commissioner pointed out, the administrative law judge reasonably found inconsistencies between the Minot treating notes and the Minot opinion: for example, although Dr. Minot found marked limitations in the plaintiff's memory, *see* Record at 634, he repeatedly indicated on examination that her memory was intact, *see, e.g., id*. at 409, 608.

In addition, in this case, there was more: the administrative law judge's finding of inconsistency was buttressed by Dr. Tingley's expert testimony.  Dr. Tingley testified that Dr. Minot's notes reflected that the plaintiff's ADHD and depression improved over time, with notable progress as of April 2010.  *See id.* at 697-98.  On cross-examination by the plaintiff's counsel, Dr. Tingley continued to adhere to the view that, despite the September 2008 letter, Dr. Minot's underlying notes were consistent with moderate, rather than marked, functional restrictions, given treatment gaps and indications in those notes of progress.  *See id.* at 699-705.

At oral argument, the plaintiff's counsel contended that Dr. Tingley's testimony, like that of the nonexamining consultant in *Ormon*, was insufficiently well-explained to constitute "substantial inconsistent evidence" displacing the Minot opinion.  He reasoned that this was so because Dr. Tingley spoke in generalities, failing to identify the particular evidence that clashed with Dr. Minot's views.  Yet, as counsel for the commissioner pointed out, *Ormon* does not stand for the proposition that an expert such as Dr. Tingley must explain in detail why he or she thinks a treating physician is wrong.  Rather, the question is whether the explanation given by the nonexamining physician for his or her own opinion can be found to be supported by substantial evidence.  *See, e.g.*, *Ormon*, 2012 WL 3871560, at *3.  In this case, unlike in *Ormon*, it can be.

The administrative law judge's handling of the Minot opinion, as supplemented by the 2008 letter, comported with the commissioner's regulations.  Once an administrative law judge supportably determines that a treating source opinion is not entitled to controlling weight, he or she has the discretion to reject it, provided that he or she supplies "good reasons" for so doing.  *See, e.g.,* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96–5p, reprinted in *West's Social*

*Security Reporting Service* Rulings 1983–1991 (Supp. 2012) ("SSR 96–5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96–8p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2012) ("SSR 96–8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").  The administrative law judge did so here.

Dr. McKim found, as the result of a cognitive evaluation performed on May 25, 2011, that the plaintiff's overall intellectual functioning was in the extremely low range, placing her capabilities in the range of mild mental retardation.  *See id*. at 1200, 1203.  She wrote:

> Neither educational records nor results from any past evaluations were available for review.  These scores are nonetheless consistent with what appears to be [a] longstanding pattern of problems with cognitive function that antedate 12/01/05.  It should be noted, however, that [the plaintiff] claims her problems have significantly worsened since her automobile accident.  Review of the medical record suggests that she experienced no head trauma during her motor vehicle accidents; it is therefore deemed unlikely that her current functioning has been negatively affected by a traumatic brain injury.  Should other information to the contrary become available, a re-evaluation of the onset of her cognitive difficulties might be indicated.  Additionally, it is also possible that [the plaintiff's] scores on tasks that require focus and concentration may have been negatively affected by Axis I conditions (i.e., depression and PTSD), although the Verbal Comprehension score would be less susceptible to the effects of such conditions.

*Id*. at 1203.  Dr. McKim completed a mental RFC assessment dated June 1, 2011, in which she found a number of marked limitations, particularly in sustained concentration and persistence. *See id*. at 1205-06.  The RFC form contained a pre-printed statement that the assessed limitations represented Dr. McKim's "professional opinion as to [the plaintiff's] psychological limitations from 12/1/05 to the present."  *Id*. at 1206.

The administrative law judge gave "great weight" to Dr. McKim's opinion insofar as it reflected the plaintiff's functioning subsequent to her motor vehicle accident but "no weight"

insofar as it reflected her functioning prior thereto, reasoning that Dr. McKim's statement that "the [plaintiff's] long-standing depression and anxiety have interfered with her ability to perform at jobs and sustain employment" was "a determination reserved to the Commissioner."  *Id*. at 666.

The plaintiff faults this conclusion on the bases that:

1.     Dr. McKim's opinion touched on what the plaintiff could still do despite her impairments, a proper subject of medical opinion testimony, rather than on whether she was disabled, a determination reserved to the commissioner.  *See* Statement of Errors at 17; *see also* 20 C.F.R. §§ 404.1513(b), 416.913(b).

2.     Even if the statement did touch on a subject matter reserved to the commissioner, that is not a proper basis on which to reject it outright.  *See* Statement of Errors at 17; *see also, e.g*., Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2012), at 124 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored.").

3.     Dr. McKim's opinion is consistent with that of Dr. Minot, who also found similar marked limitations, and Dr. Tingley, to the extent that Dr. Tingley testified that, prior to September 15, 2010, the plaintiff required supportive supervision.  *See* Statement of Errors at 18-19; *see also* Record at 706-07.

4.     The administrative law judge ignored Dr. McKim's finding that the 2011 test scores were consistent with what appeared to be a longstanding pattern of problems with cognitive functioning antedating December 1, 2005.  *See* Statement of Errors at 19.

5.     No evidence documents that the plaintiff's IQ was higher than found by Dr. McKim in 2011, and the administrative law judge ignored the fact that the plaintiff required special education services in school.  *See id.*

6.     The administrative law judge ignored Dr. McKim's statement that the plaintiff's Axis I conditions, including PTSD, might have negatively affected her scores in focus and concentration.  *See id.*

Assuming *arguendo* that the administrative law judge erroneously rejected the McKim opinion for the period prior to September 15, 2010, on the basis that it touched on a decision reserved to the commissioner, the error was harmless.  Elsewhere in his decision, he explained in detail why he found that, prior to that time, the plaintiff had only moderate deficits in concentration, persistence, and pace: for example, that she had cared for her two children and spent some time in Massachusetts assisting her father during a family illness, reported that she organized her appointments and medications over a seven-day period and used money orders to remember what bills she had paid, and was capable of assessing her shopping needs.  *See* Record at 658.  He further explained, and the record supports, that, although, in the wake of the plaintiff's September 15, 2010, accident, the results of an MRI of her brain were within normal limits, she was diagnosed with a traumatic brain injury with cognitive and memory deficits.  *See id.* at 665, 926-27, 942.  The plaintiff herself reported a noticeable decline in cognitive functioning subsequent to the accident.  *See id.* at 926.  Finally, he adopted the expert opinion of Dr. Tingley, who had the benefit of review of the voluminous record, including the McKim findings, that the plaintiff's mental impairments were of moderate severity prior to the accident but of marked severity thereafter.  *See id.* at 696-97.  As counsel for the commissioner noted at oral argument, in finding that the plaintiff likely did not suffer a traumatic brain injury, Dr.

McKim stated that, should other information to the contrary become available, a reevaluation of the onset of the plaintiff's cognitive difficulties might be indicated.  *See id*. at 1203.  While Dr. McKim reviewed some unspecified medical records, *see id*. at 1200, 1203, she seemingly did not have the benefit of review of records that might have changed her opinion, *i.e.*, those reflecting a diagnosis of traumatic brain injury.[10]

For all of these reasons, the finding that the plaintiff's mental impairments were of moderate severity prior to her accident and marked severity thereafter is supported by substantial evidence.  This renders harmless any error in the rationale for rejecting the McKim opinion insofar as it pertains to the period prior to the accident.

The plaintiff raises a final point of error with respect to her mental impairments: that the administrative law judge failed to include, in his mental RFC determination, Dr. Tingley's finding that she required supportive supervision.  *See* Statement of Errors at 15.

The administrative law judge asked Dr. Tingley whether, prior to the accident, the plaintiff was capable of understanding, remembering, and carrying out simple instructions, using judgment in making simple work-related decisions, responding appropriately to co-workers and supervisors in usual work situations, and adapting to changes in the ordinary work setting.  *See* Record at 696-97.  To each of those questions, Dr. Tingley responded, "Yes."  *Id*.  Later, on cross-examination by the plaintiff's counsel, he reiterated that the plaintiff, prior to the accident, had the "basic ability" to get along with supervisors, although he agreed that "supportive supervision" would be required in her case.  *Id*. at 705-07.  In response to a follow-up question

---

[10] In response to this argument, the plaintiff's counsel contended that the administrative law judge was not competent, as a layperson, to determine that Dr. McKim was wrong and could have, but did not, seek clarification as to whether the evidence altered her opinion. The administrative law judge had no duty to pose this question to Dr. McKim or otherwise seek an expert evaluation of the McKim opinion.  He made a permissible determination that the McKim opinion, insofar as it discounted the likelihood of a traumatic brain injury, was not supported by the record as a whole.  *See, e.g., Anderson*, 2012 WL 5256294, at *4.

by the administrative law judge, he clarified that he did not mean that the plaintiff required special work conditions but, rather, "just a supervisor that's sensitive to somebody returning back to work after a long period of not working [who] would be careful in explaining the job functions and the details of the job that she's supposed to do" *Id.* at 707. He added: "Not impatient, not too impatient." *Id.*

In context, Dr. Tingley's testimony regarding the need for supportive supervision does not undermine the basic conclusion that the plaintiff retained the capacity to respond appropriately to supervisors in usual work settings. In any event, even if the administrative law judge erred in failing to transmit a need for supportive supervision to the vocational expert present at the hearing, the plaintiff does not demonstrate that the omission was outcome-determinative. Her counsel did not ask the vocational expert whether a person requiring supportive supervision still could perform the jobs of cleaner and woodworker, *see id.* at 709-15, and there is otherwise nothing of record indicating that the qualification would have had any material impact on the ability to perform those jobs.

### C. Finding re: Past Relevant Work

The plaintiff finally argues that the administrative law judge's reliance on the job of cleaner is misplaced, in that it was performed more than 15 years prior to the date of the decision and, hence, does not constitute "past relevant work," and his reliance on the job of woodworker is misplaced in that it was precluded by Dr. Nielson's physical RFC. *See* Statement of Errors at 20-21.

At oral argument, counsel for the commissioner did not dispute that the job of cleaner, which the plaintiff performed between 1992 and 1995, *see* Record at 154, was performed more than 15 years prior to the date of decision and, hence, cannot qualify as "past relevant work,"

*see, e.g.*, 20 C.F.R. §§ 404.1565(a), 416.965(a) (work is considered "past relevant work" only when, *inter alia*, it was performed within 15 years from the date of the adjudication or from the claimant's date last insured, whichever is earlier).  Yet, as the plaintiff's counsel acknowledged at oral argument, his client's challenge to the administrative law judge's reliance on the job of woodworker is contingent on the success of her contention that the administrative law judge erred in his handling of her physical impairments.  *See* Statement of Errors at 20-21.  I have recommended that the court reject that argument.  If the court agrees, the instant challenge to the woodworker job also falls short, and the administrative law judge's Step 4 finding should be affirmed.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of March, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge